OPINION OF THE COURT
Gabrielli, J.
In August, 1976, pursuant to a search warrant issued by Monroe County Court Judge Culver Barr, agents of the New York State Organized Crime Task Force (Task Force) entered into petitioners’ business premises and seized the bulk of all their business records for the previous two years. Today, *231 almost two years later, the Task Force still has those records. The Task Force has never explained to petitioners the reason for the seizure, the nature of the Task Force’s interest in petitioners, nor the use the Task Force intends to make of the records. The seizure has not resulted in any indictments or prosecutions nor, indeed, the presentation of any evidence to any accusatory authority against or concerning these petitioners, and there is nothing to indicate that such will be the case. In short, the petitioners have now been deprived of their property for a substantial period without any explanation or any prior opportunity to object to the seizure.
Immediately following the execution of the warrant, the petitioners made several unsuccessful attempts in both State and Federal courts to regain their property, or at least to obtain an explanation of the seizure. Finally, in desperation, they commenced this article 78 proceeding in the nature of prohibition seeking to compel Judge Barr and the Task Force from acting in excess of their jurisdiction by retaining custody of the records pursuant to a search warrant the issuance of which involved an excess of jurisdiction. The Appellate Division granted the application for the writ of prohibition, and the Task Force and Judge Barr appeal from that judgment. For the reasons discussed below, we sustain the writ and affirm the judgment appealed from.
 Whenever a court is presented with an application for a writ of prohibition, it must first determine whether that extraordinary remedy will lie in the particular case. In recent years we have had considerable opportunity to discuss the origins and nature of the writ (see, e.g., Matter of Steingut v Gold, 42 NY2d 311, 315-316; Matter of Dondi v Jones, 40 NY2d 8; La Rocca v Lane, 37 NY2d 575; Matter of State of New York v King, 36 NY2d 59; see, generally, Note, Writ of Prohibition in New York — Attempt to Circumscribe an Elusive Concept, 50 St John’s L Rev 76), and there is now no need to reiterate what we have previously stated in considerable detail. It is enough to note that "the extraordinary remedy of prohibition lies only where there is a clear legal right and only when the body or officer 'acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction’ * * * It must be directed to some inferior judicial tribunal or officer and lies to prevent or control judicial or quasi-judicial action only, as *232 distinguished from legislative, executive or ministerial action. * * * A public prosecutor is a quasi-judicial officer, who performs important duties within our judicial system, and is subject to prohibition under proper circumstances” (Matter of Dondi v Jones, 40 NY2d, at p 13, supra).
The present case falls within these bounds. The petitioners contend that the Task Force is without authority to obtain a search warrant, and thus it was an excess of jurisdiction for the court to issue the warrant at the behest of the Task Force and to entrust the seized material to the Task Force’s custody purportedly pursuant to CPL 690.55 (subd 1, par [b]). If this contention is correct, the court and the Task Force have indeed exceeded their respective jurisdiction. Clearly the writ of prohibition may run against the court. With respect to the Deputy and Assistant Attorneys-General who comprise the Task Force, it is sufficient to note that we have held public prosecutors to be quasi-judicial officers for purposes of the writ of prohibition, declaring them to be subject to the writ in a proper case (see Matter of Dondi v Jones, 40 NY2d, at p 13, supra; cf. Toker v Pollack, 44 NY2d 211, decided herewith). The same is true of these officials. It should be noted, moreover, that the seized property is still in the custody of the Task Force pursuant to court order, and thus the evil complained of has not yet run its course.[1]
Essentially, petitioners contend that they have been improperly and illegally deprived of their property pursuant to court order, that this deprivation continues and is likely to continue indefinitely, and that there exists no other adequate remedy. As we have previously declared, "the extraordinary remedy of prohibition has not developed as a linguistic exercise but as a response in language and concept to the recognized needs and accommodations in a society governed by the rule of law. There is a larger logic than that delineated by etymology. To eliminate or minimize the concept of an excess of power, on *233 presumed verbalistic grounds, would undermine a common-law principle of ancient standing and the continuods statutory statement of that principle” (La Rocca v Lane, 37 NY2d, at p 581, supra).
In most cases, prohibition will not be available to challenge the validity of a search warrant. For one thing, it will lie only if the challenge, as in the present case, goes to jurisdiction rather than simply to the existence of probable cause in a particular situation. Of equal significance is the fact that in the typical case there will exist an adequate alternative remedy. A search warrant is most often used to obtain evidence in the course of a criminal investigation of a particular crime, an investigation which will soon eventuate in a criminal proceeding. In such cases, the validity of the search warrant will of course be subject to challenge by means of a motion to suppress, the denial of which is appealable in the context of an appeal from the resultant conviction. Here, however, there is no prosecution, and there is no indication that there ever will be a prosecution, and thus there is no opportunity for a motion to suppress. To allow the failure to prosecute, a failure which may well be due to the absence of sufficient grounds to prosecute, to serve as a shield for the allegedly illegal seizure and retention of private property by government agents would be to make a mockery of justice. This is indeed a proper case for application of the just and ancient writ of prohibition.[2]
*234 Before proceeding to the merits of petitioners’ claim, it is necessary to deal with one other procedural question: that is, whether this proceeding was properly commenced in the Appellate Division rather than at Special Term. Normally, article 78 proceedings are commenced at Special Term. When such a proceeding is initiated against a Supreme Court Justice or a Judge of a County Court, however, it must be commenced in the Appellate Division (CPLR 506, subd [b], par 1). Since one of the respondents in this proceeding is a County Court Judge, the proceeding, as required by statute, was properly commenced in the Appellate Division. Respondents contend that this was improper. They note that a search warrant can only be issued by a local criminal court (CPL 690.05), and that a County Court is not a local criminal court. Pursuant to CPL 10.10, a County Court Judge can sit as a local criminal court, but only for the limited purpose of dealing with preliminary matters in criminal proceedings, including search warrant applications. Respondents argue that since Judge Barr was sitting as a local criminal court when he issued the search warrant, he was not a County Court Judge with respect to the search warrant, and thus CPLR 506 is inapplicable and the proceeding should have been commenced at Special Term. We find this argument unpersuasive. Although it is true that Judge Barr was sitting as a local criminal court when he issued the search warrant, it is equally true that he is nonetheless still a County Court Judge. Indeed, his power to sit as a local criminal court is derived from his position as a County Court Judge and is thus a part of his authority as a County Court Judge. Hence, this proceeding was properly commenced in the Appellate Division.
Turning next to the merits of this case, the question before us is whether the Task Force has the authority to obtain a search warrant. CPL 690.05 provides that a search warrant may be issued to "a police officer, a district attorney or other public servant acting in the course of his official duties”. The penultimate issue, then, is whether the power to obtain a search warrant is within the official duties of an agent of the Task Force. If it is not, this absence of authority may not be overcome by the simple stratagem of using a State Police officer to obtain the warrant on behalf of the Task Force. While a State Police officer qua police officer does indeed have the authority to apply for a search warrant in pursuance of his police duties, he does not have such power *235 when he is acting solely as an agent of a State agency which does not itself have that authority.
The role of the Task Force is delineated in section 70-a of the Executive Law; and the duties of the Task Force are as follows (Executive Law, § 70-a, subd 1, pars [a], [b]):
"(a) To conduct investigations and prosecutions of organized crime activities carried on either between two or more counties of this state or between this state and another jurisdiction;
"(b) To cooperate with and assist district attorneys and other local law enforcement officials in their efforts against organized crime.”
In order to fulfill these duties, the Task Force is given certain powers, which may be classified as either investigatorial or prosecutorial. To aid in its investigation of organized crime activities, the Task Force has broad authority to subpoena witnesses and to require the production of "books, records, documents or other evidence” (Executive Law, § 70-a, subd 4; see Matter, of Sussman v New York State Organized Crime Task Force, 39 NY2d 227), and to impound such exhibits (Executive Law, § 70-a, subd 5). Additionally, in an appropriate case, the Task Force may grant immunity to witnesses (Executive Law, § 70-a, subd 6). Nowhere in this broad grant of investigatory power, however, is there any mention of the power to obtain or apply for a search warrant.
The Task Force also has certain prosecutorial powers in an appropriate case (see People v Rallo, 39 NY2d 217). The exercise of this prosecutorial power, however, is contingent upon prior authorization by the Governor together with the approval of the local District Attorney (Executive Law, § 70-a, subd 7). Once such approval is obtained, the Task Force is given the authority of the District Attorney, which would presumably include the power to obtain a search warrant in the course of preparing the authorized prosecution. These provisions, however, are not applicable to the present case, in light of the conceded failure to obtain the requisite approval of the Governor and the District Attorney. Since the prosecutorial powers of the Task Force are not available, the question before us is whether the purely investigatory powers of the Task Force include the power to apply for a search warrant. We hold that they do not.
 As is noted above, the powers of the Task Force are *236 established, by statute. The Task Force, as a creature of the State, has no power other than that given it by the Legislature, either explicitly or by necessary implication (see, generally, Matter of Pooler v Public Serv. Comm., 43 NY2d 750, affg 58 AD2d 940). The investigatory authority provided by section .70-a of the Executive Law clearly does not include the power to obtain a search warrant, and such power is not to be implied in light of the limited specific powers which are given. Indeed, the existence of the broad subpoena power which is provided the Task Force militates against a finding of any implied power to obtain a search warrant as well. We would note that in the present case there appears to be no reason why the Task Force could not have obtained the records by subpoena rather than via the more intrusive and less readily challenged mechanism of a search warrant.
In view of the absence of any statutory authority to obtain a search warrant, it is clear that the Task Force lacked the power to make such an application, and thus the court exceeded its jurisdiction in issuing the warrant. Accordingly, the writ of prohibition was properly granted by the Appellate Division. Although it is not necessary for the proper disposition of this case, we would note that the use of a search warrant rather than a subpoena as a part of an investigation not aimed at a particular criminal prosecution would raise questions of constitutional magnitude.
One of the basic rights and values of our society is the right of a free individual to be secure in his or her privacy from unwarranted government intrusion. Such intrusion is exemplified by an unconsented-to entry into one’s home or business and the seizure of one’s property. To limit such intrusions to the greatest possible extent, while at the same time recognizing that the needs of society will at times outweigh the interest of the individual, the Fourth Amendment to the United States Constitution specifically proscribes unreasonable searches and seizures. Thus, any search and seizure must be based on probable cause, and, absent certain exceptional circumstances, must be made pursuant to a warrant issued by a neutral and detached Magistrate (see Coolidge v New Hampshire, 403 US 443). While the question of probable cause is not before us today, we note that no court other than the issuing court has as yet had the privilege of inspecting the application for the search warrant involved in this case. *237 Indeed, the Task Force has resisted petitioners’ attempts to examine the application for the warrant.
Another method of obtaining private and business records is to be found in the subpoena duces tecum. It is somewhat less intrusive than the search warrant, in that it does not authorize the bearer to enter and seize, but instead requires the owner of the sought after property to produce it. Thus, unlike a search warrant, which has immediate and unavoidable coercive power, a subpoena provides an opportunity to challenge it by a motion to quash prior to submitting to the demand of the subpoena. Since a search warrant is a greater intrusion than a subpoena, it has been held by some Federal courts that it is improper to obtain a search warrant when the same result could be obtained by subpoena (Stanford Daily v Zurcher, 353 F Supp 124, affd 550 F2d 464, cert granted 434 US 816), or to use a subpoena as a means of coercing immediate entry and seizure (Matter of Nwamu, 421 F Supp 1361).
Of some interest here is the fact that the material seized was not contraband, nor does it appear to be the fruits or instrumentalities of crime, but rather would at most seem to be some claimed. evidence. Prior to 1966, the Supreme Court had held that a search warrant could not be used to obtain mere evidence (see Gouled v United States, 255 US 298, 309). That doctrine was overruled, however, in Warden v Hayden (387 US 294). In reaching its decision, the Hayden court emphasized the relation between evidence and the government’s interest in convicting criminals (387 US, at p 306, n 11). Indeed, the court declared that "in the case of 'mere evidence,’ probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction” (387 US, at p 307; cf. CPL 690.10; see Cook, Constitutional Rights of the Accused, Pretrial Rights, § 41). This emphasis on a particular criminal prosecution throws some doubt upon the validity of using a search warrant to obtain material not in conjunction with a particular criminal investigation aimed at prosecution, but rather as a part of a more generalized investigation of alleged organized crime activities. This doubt would seem even greater if a subpoena could be used to obtain the required material.
These questions, however, need not be decided today, in light of our determination that the Task Force lacks the *238 authority to obtain a search warrant as a part of its general investigatory authority.
The judgment appealed from should be affirmed.

. We would note that in the instant case, the writ is addressed to both the Task Force and to the Judge who issued the initial search warrant as well as the continuing custody order pursuant to which the Task Force retains the seized papers. Moreover, it must be emphasized that the Task Force is a unique organization, one with broad investigatory powers which in some instances exceed the authority of a District Attorney, and which are certainly much greater than a policeman investigating a particular crime. As our subsequent discussion will indicate, the difficulty with the search warrant in this case stems in large part from the fact that the Task Force is not exercising the power exercised by a policeman who investigates a particular crime in the hope of making an arrest which will culminate in a conviction.

. It is suggested by the dissent that prohibition does not lie in this case because there exists an adequate alternative remedy, namely, replevin. We reject that suggestion for the very reasons given by the dissent in stating that in the typical case replevin would not be an appropriate remedy since it would constitute an unjustified and unacceptable interference with a pending or potential criminal prosecution. The dissent suggests that the present case is distinguishable because the Task Force has had possession of the seized papers for almost two years, and yet no actual criminal prosecution has as yet been commenced, and thus it is unlikely that replevin would interfere with any such action. We note that at the time the present proceeding was commenced, and the plaintiff was faced with the necessity of determining what remedy was available, the seized property had been in the possession of the Task Force for a total of 22 days. Indeed, the attorneys for the Task Force have stated that in light of this proceeding, and the possibility that the search warrant would be deemed invalid, the Task Force has not yet attempted to utilize the papers seized. Thus, applying the reasoning expressed by the dissent, it would clearly appear that replevin was not a proper remedy at the time this proceeding was commenced. We hardly think that the passage of time while the controversy made its way through the judicial system could have an effect on the validity of the underlying proceeding. Additionally, to further illustrate the inappropriateness of the suggested remedy is the fact that the posting of a bond by one holding the property as provided by CPLR 7103, would permit the Task Force to continue to retain possession for some time.