OPINION OF THE COURT
Martin Evans, J.
By notice of motion dated April 17, 1979, the State Commission on Judicial Conduct moved for orders compelling five named witnesses to continue to testify, pursuant to subpoenas theretofore duly served upon them. In opposition, each of the witnesses claims that the questions which have been asked in the investigations so far as they have gone, are beyond the scope of the investigations permitted by law; and that, as to one of the witnesses, the questioning was not designed to obtain answers to questions within the proper scope of the investigation but to harass him by the service of successive subpoenas to obtain testimony on the same subject to verify the commission’s suspicions that his prior testimony was false. The witnesses also ask that their proceedings be consolidated with a proposed CPLR article 78 proceeding.
By order to show cause dated May 8, 1979 petitioner, Nicholson, who also has been served with a subpoena to testify before the commission, and the Judge whose conduct is the subject of the original complaint to the commission, have instituted a proceeding under CPLR article 78 for an order consolidating the commission’s five motions dated April 17, 1979 with the article 78 proceeding, for an order prohibiting all proceedings of the commission against the Judge, and for related relief.
Consolidation of the commission’s motions with the article *64 78 proceeding is appropriate and is therefore ordered. The factual issues are interrelated, as are the principles of law.
The bases of the article 78 proceeding are, first, that the subject matter of the investigation was beyond the authority of the commission to investigate since no complaint relating to it had been received by the commission; and that the testimony sought concerned the exercise of freedom of speech, assembly and association about which the commission might not inquire.
i
The threshold question to be addressed is that raised by the second defense in the article 78 proceeding, i.e., since the Judge involved has the right to present all claims and arguments, if and when a formal complaint is filed, first to the commission and then to the Court of Appeals, whether procedure by way of this article 78 proceeding is appropriate. Although these avenues are indeed open to the Judge whose conduct is the subject of the investigation, they are not available to the witnesses, whose sole recourse is either to oppose the motions made by the commission, or to institute this article 78 proceeding. In this case, one of the witnesses, Nicholson, has together with the Judge, commenced this proceeding and the other witnesses have, in effect joined it. If this remedy were unavailable, they would be without any method of obtaining a judicial declaration as to their rights. As was appropriately stated in Matter of Darrigo (State Comm, on Judicial Conduct) (NYU, June 7, 1979, p 10, cols 3, 4): "Ordinarily one who objects to the act of an administrative agency must exhaust the available administrative remedies before being permitted to litigate in a court of law * * * 'The exhaustion rule, however, is not an inflexible one. It is subject to important qualifications. It need not be followed, when an agency’s action is challenged as either unconstitutional or wholly beyond its grant of power.’ ”
Here, the first challenge, by both the witnesses and the Judge, is that the investigatory action by the commission was wholly beyond its authority.
Although, in the majority of cases, prohibition would not lie, since such a grievance ordinarily is correctable on appeal after final determination, that is not the case when a continuance of an unauthorized act might result in grievous harm.
*65 Here, the commission seeks among other things to obtain not only the names of contributors to an election campaign, but has questioned some of them not only in order to determine the reasons for their contributions to the election campaign of this particular Judge, but to determine whether they had contributed to other judicial campaigns.
While the names and addresses of contributors are available as a public record (Election Law, § 14-102, see Buckley v Valeo, 424 US 1), any abuse of that requirement which might cast a chill over the right and freedom of people to associate for proper purposes must be struck down before the effect of that abuse can be felt. (Bates v Little Rock, 361 US 516; NAACP v Alabama, 357 US 449; see Zwickler v Koota, 290 F Supp 244.) Under these circumstances, an article 78 proceeding is proper. (Matter of Civil Serv. Employees Assn. v Helsby, 31 AD2d 325, affd 24 NY2d 993; Matter of B. T. Prods. v Barr, 44 NY2d 226; La Rocca v Lane, 37 NY2d 575.)
n
The power of the commission to initiate an investigation is not arbitrary, but is limited by the requirement that it must be based upon a complaint. (Judiciary Law, § 44, subds 1, 2.)
It is the complaint which triggers the exercise of the commission’s power; and it is the complaint which sets the proper bounds to the exercise of that power. (Matter of Nicholson v State Comm. on Judicial Conduct, 67 AD2d 649; Matter of Darrigo [State Comm. on Judicial Conduct], supra.)
Since the complaint may not be disclosed to any person (Judiciary Law, § 45), except to the Judge involved (Judiciary Law, § 44, subd 3), the witnesses have no remedy to determine whether or not their interrogation is within proper bounds except through application to this court, at which time that may be determined.
An in camera hearing was held. The court allowed petitioners and the witnesses, who were not present, to suggest lines of questioning, and specific questions, so that adequate exploration of the issues could be had. While an adversarial hearing may, in some cases, be a better vehicle for the testing of the matter, the court is satisfied that the facts elicited at the hearing, on the sealed record, were sufficient to permit a ruling on this important threshold issue.
The original complaints received by the commission both *66 in writing and by telephone calls were addressed to the propriety of a particular fund-raising meeting held on December 4, 1977.
On December 29, 1977, the commission authorized an investigation of these complaints.
Between the date of authorization of the investigation of those complaints and January 10, 1979 an investigation was commenced, which was neither limited to the original complaint nor authorized by any resolution of the commission. It was wide ranging, and, although based in part upon suspicions of the commission’s investigation and in part upon information derived through the investigation, it was clearly beyond the scope of the original authority.
In January and February, 1979, information was brought to the attention of the commission relating to matters other than the December 4, 1977 complaint, and the investigation continued, with the taking of testimony, during the ensuing months.
It was not until March 21, 1979 that the commission approved the filing of an administrator’s complaint, which was signed on March 27, 1979. This complaint was based on other information which had been obtained by the commission after it had begun its investigation of the propriety of the December 4, 1977 letter.
The information which was the basis of the administrator’s complaint did not come from the overly broad investigation of the December, 1977 complaint. If it had, suppression of evidence illegally obtained might lie (CPLR 3103, subd [c]). The hearing disclosed that this further information was voluntarily brought to the attention of the commission by third parties, and that the commission’s investigators had not previously given the information which they had obtained in their earlier search to these third parties so that it could then be returned to the commission in the guise of an independent complaint.
The administrator’s complaint dated March 27, 1979 and the amended complaint of April 18, 1979 had an adequate basis, was properly authorized by the commission, and is a proper foundation for the investigation being conducted.
iii
Petitioners allege that the investigation of the commission into the planning of the election, campaign, into the *67 names of the persons who participated, and into its fund raising and expenditures, casts such a chilling effect upon the election process that it must be halted.
That the State has a compelling interest in the maintenance of a judiciary free of the taint of unethical behavior is clear. It is equally clear, that the right of citizens to support candidates of their own choice; and indeed, the right of citizens to be candidates for public office is of the same high importance.
At immediate issue here is the claim of the commission that it is investigating conduct of a judicial candidate which it alleges was improper. Items numbered 1 and 3 of the complaint relate to conduct of the Judge; item No. 2 however, does not, and unless properly amended to claim that the conduct was by, or at the direction of the Judge, does not support the investigation into the Judge’s conduct; although it may be the subject of other charges by a different body against other persons.
With respect to item No. 1, petitioner argues that the Canons of Judicial Ethics, which prosecutes such conduct, is itself improper as violative of the right of judicial candidates to obtain support for their candidacies. If, in fact the canons are so read, serious questions are raised. It might prevent a person from becoming a candidate; it appears to infringe on the heretofore undoubted right of a candidate to ask others to cast their votes in his favor or persuade third parties to vote for the candidate.
However, as to that question, the matter is premature. The complaint does not specify violation of the canons and until the facts are assembled and analyzed through the administrative process no firm conclusions can be drawn. Under these circumstances, it is proper for the commission to continue its investigation.
As to the third item, there is no doubt but that investigation into that charge is proper. Although a clearer definition of favoritism would, no doubt, be helpful, this is a matter which may well be resolved on a case-by-case basis.
IV
The motions by the commission to compel answers, with respect to the five witnesses, are granted. There was no showing that the witnesses were deliberately recalcitrant or reluctant in their testimony; rather, their objections were *68 largely based on their belief that the complaint under which this investigation had commenced was limited to one fund-raising affair; and, under the commission’s procedure and the applicable statute, they had no knowledge of the scope of the more recently filed complaint.