OPINION OF THE COURT
Stanley L. Sklar, J.
This case presents the novel issue of whether prohibition is available to bar an administrative agency from considering, at a license revocation hearing, documentary evidence, claimed *143 to have been derived from an illegal search and seizure, without affording the licensee an opportunity to test the validity of the search and seizure before the appropriate forum. Since the Administrative Hearing Officer is without jurisdiction to decide the search and seizure issue, and since the exclusionary rule is applicable to administrative proceedings, prohibition lies if the licensee makes a sufficient showing of merit on its suppression motion. Thus, the application to dismiss the petition is denied and respondents are directed to serve an answer.
FACTS
Respondents, the Hearing Officer for the New York State Banking Department and the Superintendent of the New York State Banking Department, allege that in 1987 a confidential investigation was started by the Richmond County District Attorney’s office centered on Emile Gouiran’s unauthorized practice of law and issuance of false financial statements. Gouiran, an attorney admitted solely to the New Jersey Bar, maintained a law office on the second floor of the Gouiran Building, a three-story building located at 386 Forest Avenue, Staten Island. The ground floor was occupied by a mortgage company, GHI, "The Mortgage Money People”. The sole shareholder of GHI is Mr. Gouiran’s mother, Dr. Dema Gouiran. Also located on the first floor of the Gouiran Building is the private office of a chiropractor.
Respondents further allege that during the investigation it appeared that there were violations of the Banking Law and the General Business Law. Accordingly, the District Attorney’s office alerted the Banking Department, and the Real Estate Financing and Securities Bureaus of the Attorney-General’s office. In order to confirm the existence of the violations and also because of a concern that a "substantial likelihood of alteration and/or removal of documents” existed, the District Attorney’s office obtained and executed three search warrants to obtain these documents on February 4, 1988. One warrant was directed to the premises of GHI, another was directed to the person of Emile Gouiran, and the third was directed to the premises of Castle Abstract, Inc., located on the second floor of 392 Forest Avenue, and also to the basement storage area for Castle and GHI. All three warrants indicate that the property to be seized is that which tends to show that Emile Gouiran participated in the unlawful practice of law and issued a false *144 financial statement. Petitioner alleges that, despite the narrow scope of the warrants, "nearly every business record” of GHI, Castle and the law office was seized.
On the same day, the Banking Department served upon GHI an order suspending GHI’s mortgage banking license for 30 days, pursuant to Banking Law § 595 (2),[1] on the grounds that Emile Gouiran has been "heavily involved” in the operation of GHI which was licensed on the condition that he not be involved in any manner in such operation and that "Emile Gouiran, operating through GHI has been and is engaging in activities which are illegal under the Banking Law.”
On March 8, 1988, the Banking Department served GHI with a notice of hearing and statement of charges and scheduled a license revocation hearing for March 30, 1988. The hearing commenced in the afternoon of March 30, 1988. At that time GHI moved for a stay of the proceeding before the Hearing Officer on the grounds that the notice of charges was inadequate in certain respects, and that items sought to be introduced by the Banking Department were the product of an illegal search and seizure. With respect to this latter claim, GHI stated that, since the warrants authorized the search for evidence of only two misdemeanors, namely, Emile Gouiran’s unlawful practice of law and his filing of false financial statements, the seizure of nearly every business record and document from GHI’s premises, almost none of which, it is claimed, had anything to do with the two alleged misdemeanors, was overbroad and, therefore, unlawful. In addition, it is claimed that the prospective testimony of witnesses who were listed in the Banking Department’s response to GHI’s discovery request will be derived in large part from the illegally seized records. GHI urged that, since the exclusionary rule applies to administrative proceedings and, since the administrative agency lacks jurisdiction to pass on the legality of the search (Matter of Finn’s Liq. Shop v State Liq. Auth., 24 NY2d 647, cert denied 396 US 840), the proceeding must be stayed to permit the Supreme Court to consider GHI’s suppression application. The Hearing Officer denied the stay while agreeing, however, that he had no authority to determine the suppression issue (see, Matter of Finn’s Liq. Shop v State Liq. Auth., supra, at 660), and thereby indicated, in effect, that he was going to proceed with the hearing as *145 though the exclusionary rule did not apply. GHI then filed the instant proceeding.
DISCUSSION
GHI’s instant application seeks to bar the respondents, the Hearing Examiner and the Superintendent of the Banking Department, from proceeding with all administrative proceedings by the Banking Department including the license revocation hearing, until this court can render a decision on the merits of GHI’s application for suppression of evidence derived from the allegedly illegal search and seizure. Respondents did not serve an answer but instead cross-moved to dismiss (CPLR 7804 [f]), raising several threshold issues. They urge that this application cannot be made before this court but rather must be made in Richmond County. Citing CPL 710.50 (1) (a), they argue that a suppression motion must be made in the Supreme Court of the county in which an indictment is pending, "or if the defendant has been held by a local criminal court for the action of a grand jury * * * in the superior court * * * which impaneled or will impanel such grand jury”.
CPL 710.50 is inapplicable. It is clear that it refers to a suppression motion made in the context of a criminal action. (See, CPL 710.40 [1] ["A motion to suppress evidence must be made after the commencement of the criminal action in which such evidence is allegedly about to be offered”].) Further, this is not a case in which "the defendant has been held by a local criminal court for the action of a grand jury”, nor is an indictment pending. (CPL 710.50 [1] [a].) While it is true that a Grand Jury has been impaneled in this matter, it is undisclosed who the targets are, and uncertain whether any indictments will be handed down.[2]
*146 One threshold issue remains. During oral argument of this application, which was characterized as an application for a preliminary injunction, on April 8, 1988,1 expressed a concern with the adequacy of petitioner’s papers in that the assertion of the overbreadth of the execution of the warrants appeared conclusory and also because GHI seemed to be seeking suppression of documents seized from Castle and Emile Gouiran, thereby casting doubt on its standing to suppress. Because petitioner then assured the court that, if given the opportunity, it could make an adequate showing of merit the court adjourned the matter to allow petitioner to supplement its papers.
Respondents, after receiving petitioner’s supplemental memorandum of law, declined to address the merits of the application. Instead, they contended that, since the ultimate relief sought is a review of the Hearing Examiner’s evidentiary ruling, what petitioner was actually seeking was a writ of prohibition restraining the Hearing Examiner from "proceeding * * * without or in excess of jurisdiction”. (CPLR 7803 [2]; see generally, Schachter v Tomaselli, 105 AD2d 779 [2d Dept 1984].) Respondents further asserted that, since the facts of this case do not warrant a departure from the doctrine of *147 exhaustion of administrative remedies, prohibition does not lie and the application must be dismissed. Respondents reserved the right to serve an answer addressing the merits of petitioner’s claims should this court reject respondents’ assertion regarding the availability of prohibition. (See, CPLR 7804 [f].)
Thus, the sole remaining issue at this point in the proceedings is whether prohibition can properly be brought as an exception to the doctrine of exhaustion of administrative remedies, to allow petitioner to obtain interlocutory review of the Hearing Officer’s determination to permit the introduction of evidence without regard to whether or not it is tainted. This court holds that if, following receipt of respondents’ answer, it is determined that petitioner has made a sufficient showing entitling it to a suppression hearing (see, n 2, supra), prohibition lies.
It is well established that the exclusionary rule is applicable not only to criminal proceedings but also to administrative proceedings. (People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76.) The Court of Appeals, noting that "[t]o the extent that the State, or its agents, can bypass the deterrent effect of the exclusionary rule [Mapp v Ohio, 367 US 643] by using the fruits of an illegal search in a 'civil’ or 'administrative’ proceeding, the incentive for enforcement and investigative personnel to exceed constitutional limitations on their activity remains and the effectiveness of the rule as a deterrent is diminished”, held that an administrative agency must proceed in accordance with the Constitution. (Matter of Finn’s Liq. Shop v State Liq. Auth., 24 NY2d 647, 653, supra.) The court further concluded that, since "[t]here can be no justification for any State agency, charged with enforcement of the law, to rely, in fulfilling its function, upon the unlawful and unconstitutional acts of its agents” (supra, at 662-663), when agents of a State agency engage in unconstitutional acts the agency cannot use the fruits of that unlawful activity to impose sanctions on those whose constitutional rights have been violated. (Supra, at 655.)
Respondents do not dispute that evidence acquired in violation of US Constitution Fourth Amendment is inadmissible at an administrative hearing. Rather, they urge that the issue here is whether petitioner "may obtain a judicial determination of the constitutionality of such evidence prior to a final administrative decision.” Respondents contend that the facts of this case do not justify the application of the extraordinary *148 remedy of prohibition as an exception to the doctrine of exhaustion of administrative remedies. This court disagrees.
Prohibition is available to restrain a lower tribunal from acting, or threatening to act, not only without jurisdiction but also in excess of its powers in a proceeding over which there is jurisdiction. (Matter of Holtzman v Goldman, 71 NY2d 564, 569; Matter of B. T. Prods. v Barr, 44 NY2d 226, 231; La Rocca v Lane, 37 NY2d 575, 578-579.) It is not available to correct trial errors of procedural or substantive law no matter how serious. (Matter of Holtzman v Goldman, supra, at 569; Matter of Rush v Mordue, 68 NY2d 348, 353.) Further, the fact that such procedural or substantive errors of law might implicate fundamental constitutional rights does not necessarily mandate the granting of the writ. (Matter of Rush v Mordue, supra, at 354.) "Prohibition may lie, however, where the claim is substantial, implicates a fundamental constitutional right, and where the harm caused by the arrogation of power could not be adequately redressed through the ordinary channels of appeal.” (Matter of Rush v Mordue, at 354.) "If, however, appeal or other proceedings would be inadequate to prevent the harm, and prohibition would furnish a more complete and efficacious remedy, it may be used even though other methods of redress are technically available (see, e.g., Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 437 * * * Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 40 * * *)”. (La Rocca v Lane, supra, at 579-580.)
It has been observed that the distinction between a court acting in excess of power and a court making a procedural or substantive error of law is often hard to draw. (Matter of Holtzman v Goldman, supra, at 569; Matter of Rush v Mordue, supra, at 353; La Rocca v Lane, supra, at 580, 581.) Some decisions suggest that the writ is available only when the lower tribunal "exceeds its jurisdiction or authorized power in such a manner as to implicate the legality of the entire proceeding”. (See, Matter of Rush v Mordue, supra, at 353 [emphasis added]; Matter of Holtzman v Goldman, supra, at 569; Matter of Doe v Axelrod, 71 NY2d 484, 490.)
This formulation is easily discernible in some cases in which prohibition has been granted. (See, e.g., Matter of Holtzman v Goldman, supra, at 570 ["The trial court’s dismissal (of the criminal case when the People were not ready to go to trial) * * * was not merely a legal mistake, it related to the power of the court and affected the entire proceeding in the most conclusive manner; it terminated the case.”]; Matter of *149 Kraemer v County Ct., 6 NY2d 363 [prohibition will lie where defendant is about to be prosecuted in violation of his constitutional right against double jeopardy]; Matter of Carey v Kitson, 93 AD2d 50 [prohibition lies where defendant who was granted transactional immunity for Grand Jury testimony was to be tried on charges based substantially on that prior testimony].)
Respondents urge that, since the error here does not "challenge * * * the legality of the 'entire * * * [administrative] proceeding’ ” (Matter of Carey v Kitson, supra, at 57), prohibition does not lie. They err.
First, while, as noted above, some cases seem to suggest that what distinguishes a mere error of procedural or substantive law from an abuse of power is that the latter "implicate[s] the legality of the entire proceeding” (Matter of Rush v Mordue, supra, at 353), this formulation is not all encompassing. In La Rocca v Lane (37 NY2d 575, 581, supra), for example, the court, noting that "[w]hen a petitioner * * * presents an arguable, substantial, and novel claim that a court has exceeded its powers because of a collision of unquestioned constitutional principles, he may, in the first instance, seek redress by prohibition”, held that prohibition was an appropriate vehicle to test a ruling by the court in a criminal action which, concededly, had the "power * * * to regulate generally counsel’s conduct and appearance” (supra, at 581), advising defense counsel, a priest, that unless he removed his clergical garb, he would not be allowed to continue as the defendant’s attorney.
Similarly, in Matter of Proskin v County Ct. (30 NY2d 15) the court, over the dissent of Judge Scileppi, who opined that prohibition was inappropriate since the " 'objection relate[d] to the merits of the application, rather than to jurisdiction’ ” (at 26), held that prohibition was available to bar enforcement of the court’s order in a criminal action directing the prosecutor to turn over to the defendant, for the sole purpose of discovery, the entire transcript of the Grand Jury proceeding that dealt not only with crimes involving the defendant but with acts of municipal corruption unrelated to the defendant’s activities. The court, while acknowledging that the lower court would have the power to order the District Attorney to turn over the Grand Jury minutes to the defendant if, after in camera inspection, the evidence before the Grand Jury appeared inadequate or illegal, held that it exceeded its power *150 when "the right of inspection [was] extended to unrelated testimony” (at 19).
Also, in Matter of Culver Contr. Corp. v Humphrey (268 NY 26, 32, supra), the Court of Appeals affirmed an order of the Appellate Division which granted a writ of prohibition directing the trial court "to desist and refrain from further proceedings with respect to the submission and taking of testimony or other proof’ concerning one item of damages in a proceeding to fix the compensation for permanent and temporary easement parcels. The court, rejecting respondent’s claim that the error was "merely one involving the method of fixing damages, [which is] curable by appeal” (at 39), held that, since the lower court had no statutory authority to fix that one item of damages, it exceeded its jurisdiction when it admitted evidence which was directed only to prove those damages (at 40). The court further noted that, although such error could be reviewed on appeal, prohibition furnished a more effective remedy in terms of time and expense (at 40).
Finally, in Matter of Clark v Flynn (9 AD2d 249 [1st Dept 1959]), the Appellate Division granted a writ of prohibition barring the lower court from receiving into evidence a communication written by the Banking Department after the court indicated at a preliminary hearing that it would not suppress at trial the document as privileged and confidential.
As can be clearly seen, the abuse of power in each of these four cases did not implicate the legality of the entire proceeding, yet prohibition was deemed appropriate.
The argument for granting prohibition in the instant case is even more compelling. This is not a case in which it is difficult to differentiate between a mere error of law or procedure and an abuse of power. See, e.g., La Rocca v Lane (supra) and Matter of Proskin v County Ct. (supra), where the lower courts in general had the power to respectively regulate counsel’s dress, and grant disclosure of Grand Jury minutes, but where it was claimed that in exercising those powers there was an abuse. In this case, the Hearing Officer simply had no power to decide the issue presented — namely, suppression of the allegedly tainted evidence; even the Hearing Officer concedes that. (Compare, Matter of Doe v Axelrod, supra, relied on by respondents, in which case the Commissioner clearly was empowered to act as he did.) The instant case does not involve mere dissatisfaction with a ruling by a tribunal that has authority to make such a ruling. (See, Matter of Ferraro v *151 Supreme Ct., 36 AD2d 841 [2d Dept 1971], affd, sub nom. Matter of Kellog v Supreme Ct., 29 NY2d 615.) Nor is this a case where jurisdiction is a question of fact that had to be developed at the administrative hearing. (See, Matter of Walston & Co. v New York City Commn. on Human Rights, 41 AD2d 238 [1st Dept 1973].)
Also, although the availability of other avenues of review does not necessarily preclude the granting of the writ (see generally, Matter of Carey v Kitson, 93 AD2d 50, 59 [2d Dept 1983], supra), in many instances in which prohibition is inappropriate the petitioner had an earlier opportunity to raise the ground upon which its application is based and to have it reviewed by a court of competent jurisdiction. (See, e.g., Matter of Blake v Hogan, 25 NY2d 747 [1969] [where, prior to seeking prohibition, the defendant in a criminal case made a speedy trial motion to dismiss the indictment]; Matter of Nigrone v Murtagh, 36 NY2d 421, 425 [1975] [prohibition did not lie to remedy allegedly gross prosecutorial misconduct where issue was raisable "by motion * * * to the court which has jurisdiction”]; Matter of B. T. Prods. v Barr, 44 NY2d 226, 233 [1978], supra [in the context of a criminal proceeding "prohibition will not (ordinarily) be available to challenge the validity of a search warrant” because there is an "adequate alternative remedy”, namely, a motion to suppress].)
In the instant case there is no "adequate alternative remedy” available to petitioner to ensure that its right to be free from unreasonable searches and seizures is protected. In a civil proceeding there is no statutory procedure as there is in a criminal case (CPL 710.60) to make a pretrial suppression motion that will be decided by a Judge who has jurisdiction to entertain the motion, develop a record on the issues and decide whether suppression is appropriate.
Indeed, the fact that in this case the Hearing Officer declined to take any testimony on the suppression issue, because of his acknowledgement that he did not have the power to do so, highlights the appropriateness of the remedy of prohibition as an exception to the exhaustion doctrine. The exhaustion doctrine serves to promote "the * * * goals of relieving the courts of the burden of deciding questions entrusted to an agency (see 1 NY Jur, Administrative Law, § 5, pp 303-304), preventing premature judicial interference with the administrators’ efforts to develop, even by some trial and error, a coordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of *152 possible judicial review, to prepare a record reflective of its 'expertise and judgment’ (Matter of Fisher [Levine], 36 NY2d 146, 150; see, also, 24 Carmody-Wait 2d, NY Prac, § 145:346).” (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978].) These purposes are not served here where the Hearing Officer acknowledges that the exclusionary rule is applicable, but decides to admit evidence, in effect, as though the rule did not apply because of his belief that he cannot rule on the issue. First, on appeal there will be no record developed by the agency on the suppression issue since the Hearing Officer declined to address it. Hence, review will be impossible. Second, the record that is actually developed will likely not be substantially based on questions entrusted to the agency because of its expertise but, rather, will very possibly consist of evidence the admissibility of which the agency has no expertise or jurisdiction to decide.
Moreover, respondents’ position that the exclusionary rule applies to administrative proceedings, but that a party should have to wait until after the agency’s determination to make the suppression application, flies in the face of the Court of Appeals decision in Finn’s Liq. Shop (24 NY2d 647, 655, 662, supra) which, in holding that Mapp "applies equally” to criminal and administrative proceedings, ruled that when agents of a State agency engage in searches and seizures, the agency cannot "avail itself of the fruits of such unlawful activity in order to impose sanctions upon the persons whose constitutional rights have been violated.” Common sense and justice mandate that the aggrieved party be given an opportunity to contest the search before sanctions are imposed, not after. This is especially true where the sanction sought to be imposed, revocation of GHI’s license, is substantial. This conclusion is buttressed by the court’s decision in Piccarillo (48 NY2d 76, 79, n 2, supra), which stated that "[t]he proper procedure to be followed where there is a criminal proceeding pending and parolee seeks to suppress evidence at a parole revocation hearing would be for the Board of Parole to adjourn the hearing pending the determination of the parolee’s application to the court for an order to suppress. This is, of course, not to say that the Board of Parole is precluded from continuing the parole revocation hearing if only evidence, which is not the subject of the suppression motion, is considered.” (See also, Matter of Finn’s Liq. Shop v State Liq. Auth., supra, at 660, n 5; cf., CPLR 4506 [4].) Respondents’ claim that Piccarillo is distinguishable because it involves a habeas cor *153 pus proceeding under CPLR article 70 which specifically permits interlocutory rulings is not persuasive. A significant part of the Piccarillo decision consisted of a rejection of the agency’s argument that the well-settled rule in Finn’s Liq. Shop should not apply when the target of the illegal search and seizure is a parolee and the administrative proceeding is a parole revocation hearing. (People ex rel. Piccarillo v New York State Bd. of Parole, supra, at 81.) Thus, the court held that the parolee is entitled to the same rights as any other aggrieved party at any other type of administrative hearing. Consequently, the fact that Piccarillo involved a habeas corpus proceeding appears to be of no import.
Accordingly, if GHI makes an appropriate showing of merit (see, n 2, supra) prohibition will lie since "the claim is substantial, [novel,] implicates a fundamental constitutional right, and * * * the harm caused by the [claimed] arrogation of power could not be adequately redressed through the ordinary channels of appeal.” (Matter of Rush v Mordue, supra, at 354; La Rocca v Lane, 37 NY2d, supra, at 579-581; cf., Doe v Axelrod, 136 AD2d 410 [1st Dept 1988].) Thus, the motion to dismiss is denied. Respondents are directed to serve an answer within eight days from the date of this order.

. Banking Law § 595 (2) permits the Superintendent to suspend a license for up to 30 days on good cause shown pending investigation.

. Because the Grand Jury is now actually sitting, and because of the uncertainty as to whether GHI will be indicted, some difficulties are present. First, GHI does not now have access to the application underlying the search warrants and may be handicapped in effectively presenting its suppression motion. (See, Matter of Search Warrant, 108 Misc 2d 440, 445 [Crim Ct, Kings County 1981].) Second, effective opposition by the Banking Department to the suppression motion could well require the Department to reveal matters that might compromise the Grand Jury proceeding. Third, if GHI is ultimately indicted, a ruling by this court as to whether it (GHI) has standing and has alleged sufficient facts to warrant the holding of a suppression hearing (not to mention the determination at the conclusion of such hearing) could conceivably differ from that of the court in the county where the indictment is pending in response to a motion made pursuant to CPL article 710.
*146 Accordingly, in order to avoid conflicting rulings this court intends to make a preliminary, nonbinding (with respect to the Justice who may be presiding in the criminal action) finding as to whether GHI’s instant application is facially valid with respect to standing and facts. If it does not so appear, the application staying the administrative hearing will be denied. If a sufficient showing is made, the writ shall be granted in which event the following procedure is contemplated:
The administrative hearing will be adjourned pending receipt of the Grand Jury’s determination. It is presumed that the supervising Justice will ensure an orderly and efficient Grand Jury presentation and will grant an extension of the term of the Grand Jury only upon a proper showing. The respondents, if desired, may continue with a hearing based only on evidence not subject to the suppression motion. (See, People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76, 79, n 2.) If respondents decide to continue with the hearing, allegedly tainted evidence that has already been introduced shall be stricken. (See, Matter of Culver Contr. Corp. v Humphrey, 268 NY 26, 33; cf., Matter of Clark v Flynn, 9 AD2d 249 [1st Dept 1959].) If at the conclusion of the Grand Jury proceedings an indictment is issued the suppression application will be transferred to Richmond County which shall not be bound by this court’s preliminary facial finding of standing and facts. If no indictment is issued the parties shall so inform this court which will then conduct the suppression hearing.
Until the suppression issue is resolved, the court intends to continue an order prohibiting Emile Gouiran’s involvement in GHI and permitting daily inspections of GHI by the Banking Department.