OPINION OF THE COURT
David Demarest, J.
This is a special proceeding, pursuant to Civil Practice Law and Rules article 78, seeking an order enjoining the respondents from selling or disposing of certain tobacco products seized from petitioner and directing the immediate release of the seized property.
Parties
Petitioner, HCI Distribution, Inc. (HCI) describes itself as “an economic and political subdivision of the Winnebago Tribe of Nebraska, a federally recognized Indian tribe.” Respondents New York State Police, Troop B Commander, Ray Brook, New York, and New York State Police Evidence Custodian, Ray Brook, New York, are the police agency which seized and retain custody of tobacco products from HCI. They will be referred to as “State Police.” Respondent St. Lawrence County District Attorney Nicole M. Duvé is the duly elected District Attorney of *745 St. Lawrence County. She supervises the respondent Jonathan Becker,* an Assistant District Attorney.
Related Persons and Entities
Michael Cagle is a truck driver who worked for D and T Transport, Inc. (D and T), a common carrier, and on January 23, 2012, was transporting a shipment of tobacco products which had been picked up on the St. Regis Mohawk Indian Reservation.
Ohserase Manufacturing, LLC (Ohserase) is a federally licensed cigarette manufacturer, organized under the laws of the St. Regis Mohawk Tribe, and manufactures Signal brand cigarettes and tobacco products.
Ho-Chunk, Inc. (Ho-Chunk) is an “economic and political subdivision of the Winnebago Tribe of Nebraska, a federal recognized Indian tribe,” and the parent company of HCI.
Facts
On January 23, 2012, HCI purchased 26,160 cartons of Signal brand cigarettes and cigars, and 72 bags of loose tobacco from the manufacturer, Ohserase, on the St. Regis Mohawk Reservation in Northern New York. The product was consigned to D and T under a bill of lading which accurately described the product being transported, its source and its intended destination — HCI’s facility on the Winnebago Reservation located in the State of Nebraska.
After leaving the St. Regis Reservation that day, Cagle was stopped at a routine Border Patrol checkpoint on State Route 37 in the Town of Waddington, St. Lawrence County. He readily supplied the agents with his bill of lading and advised them of his ultimate destination. The Border Patrol alerted the New York State Police, and Troopers, with Cagle’s consent, then broke the seal on the cargo doors of Cagle’s truck and verified the cargo matched that as stated in the bill of lading and further determined that the tobacco products did not have New York State excise stamps indicating that any New York State tobacco taxes had been paid. Cagle admitted to investigating officers that he had previously transported tobacco products from HCI in Nebraska to both the Poospatuck and St. Regis Indian Reservations in New York, and he has then picked up tobacco products at St. Regis for transport back to HCI. After holding *746 Cagle for several hours, he was released but the bill of lading, the truck, and its contents were seized. Although the truck was subsequently released, the tobacco products continue to be held by the State Police at the direction of the District Attorney, allegedly as evidence in a criminal prosecution. There have never been any criminal or civil proceedings instituted.
Neither HCI, nor any of the other entities or individuals involved in this matter, are agents licensed by the State of New York capable of possessing unstamped cigarettes for sale outside of the state.
Applicable Laws
Article 20, and specifically section 471, of the Tax Law imposes an excise tax on cigarettes and other tobacco products. Section 471 (1) provides, in pertinent part:
“There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax, including sales to qualified Indians for their own use and consumption on their nations’ or tribes’ qualified reservation .... The tax imposed by this section is imposed on all cigarettes sold on an Indian reservation to non-members of the Indian nation or tribe and non-Indians and evidence of such tax shall be by means of an affixed cigarette tax stamp. ... It shall be presumed that all cigarettes within the state are subject to tax until the contrary is established, and the burden of proof that any cigarettes are not taxable hereunder shall be upon the person in possession thereof.”
The tax, which is currently $4.35 per pack of 20 cigarettes, is intended to be ultimately borne by the consumer, but Tax Law § 471 provides a scheme to insure that the tax is properly collected and paid through the use of licensed cigarette stamping agents. The agents are required to prepay the excise tax by purchasing tax stamps which are then affixed to the cigarette package, thus proving to subsequent wholesalers, retailers and consumers that the tax has been paid. (Tax Law § 471 [2].) Section 471 (2) specifically states: “All cigarettes sold by agents and wholesalers to Indian nations or tribes or reservation cigarette sellers located on an Indian reservation must bear a tax stamp.”
*747 In recognition of the fact that tobacco sales on reservations to qualified members of the Indian nation or tribe are not taxable by the state, the Tax Law provides a coupon system for insuring adequate quantities of tax-exempt cigarettes for personal use of qualified members. (Tax Law § 471-e.) As an alternative, section 471 (5) (b) permits an Indian nation or tribe to purchase from licensed agents an adequate quantity of tax-exempt cigarettes based on probable demand. Tax stamps must be affixed and the tax paid, but agents would be issued expedited refunds or credits based upon prior approval. Finally, section 471 (6) provides that Indian nations and tribes may enter into other agreements with the state, provided they are approved by the Legislature.
The Tax Law and accompanying regulations provide a mechanism for licensed agents to sell unstamped cigarettes for out-of-state sale for which no tax would be due, but the scheme requires detailed reporting and record keeping in an attempt to insure that the cigarettes are not returned to the state for sale or reuse.
Tax Law § 481 (2) (a) provides that possession within the state of more than 400 cigarettes in unstamped packages shall be presumptive evidence that the cigarettes are subject to tax. Common or contract carriers are exempt from this presumption if they are “engaged in lawfully transporting . . . unstamped packages of cigarettes as merchandise.” (Tax Law § 481 [2] [b].)
Criminal sanctions for any person who willfully attempts to evade or defeat the cigarette excise tax, with similar provisions for exempting common carriers lawfully transporting, are provided for in Tax Law § 1814.
Propriety of Article 78 Proceeding
Respondents cite the case of Cayuga Indian Nation of N.Y. v Gould (14 NY3d 614 [2010]) for the general rule that once a criminal prosecution has commenced, a defendant may not bring a civil action to raise an issue that can be adjudicated in the criminal proceeding. However, here, as in Cayuga, no criminal proceedings have been instituted and, thus, there is no forum in which the claims made by the petitioners can be raised. An article 78 proceeding in the nature of prohibition will lie to require the return of property, seized pursuant to a search warrant and held for an unreasonable amount of time without a criminal prosecution being commenced. (Matter of Moss v Spitzer, 19 AD3d 599 [2d Dept 2005]; see Anderson v State of New York, 173 AD2d 988 [3d Dept 1991].) Although the petition *748 in Moss was dismissed, the case is distinguishable because the seizure was pursuant to a warrant and there was specific statutory authority for the retention of seized evidence in furtherance of an ongoing investigation. Here, there was no judicial sanction to the seizure and no “ongoing investigation,” but merely some vague statements that the District Attorney might be filing a criminal complaint.
Although the extraordinary remedy of prohibition lies only where there is a clear legal right and only where a quasi-judicial officer, such as a public prosecutor, acts without jurisdiction in a matter over which she has no power over the subject matter, the allegations of the petition, if established, would support such relief. (Matter of B. T. Prods. v Barr, 44 NY2d 226 [1978].) Here, the New York State Police, at the specific direction of the St. Lawrence County District Attorney, has seized property owned by the petitioner, without a warrant and without commencing a criminal prosecution. The respondents do not argue that any taxes are actually due on the cigarettes seized, but merely rely upon certain statutory and regulatory presumptions. On the other hand, the petitioner argues that there is no tax due and, therefore, the District Attorney has no power over the subject matter.
Prohibition will not lie if there is an adequate “ordinary” remedy to right the alleged error. (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 150 [1983].) With no criminal prosecution pending, or even a warrant to contest, there is no “ordinary” remedy and this special proceeding pursuant to article 78 is proper.
Validity of Tax Law Not Challenged
Petitioner does not challenge the constitutionality of New York’s cigarette excise tax laws, or its regulatory schemes for its collection. Its argument is simply that there are no taxes due on the cigarettes and tobacco that were seized and, therefore, no basis for the seizure. Respondents rely upon statutory and regulatory presumptions that the possession of a specified quantity of unstamped cigarettes is unlawful and would impose upon Indian cigarette manufacturers the need to obtain stamps on each package of cigarettes sold out-of-state and then seek refunds for those actually sold to an out-of-state consumer.
The burden is on the petitioner to establish that the seized products are not taxable. (Tax Law § 471 [1].) To be determined, therefore, is whether or not it has met this burden.
*749 It is well established, and not contested by petitioner, that the State has the ability to tax on-reservation sales of cigarettes to nonmembers of an Indian tribe and to make off-reservation seizures of illegally transported products. (Department of Taxation & Finance of N. Y. v Milhelm Attea & Bros., 512 US 61 [1994].) However, states are prohibited from taxing cigarette sales on a reservation to enrolled tribal members for personal use. (Wagnon v Prairie Band Potawatomi Nation, 546 US 95 [2005]; Moe v Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 US 463 [1976].)
The ultimate taxable event in New York is the sale of cigarettes to a nonmember of an Indian tribe within the boundaries of New York State. Section 471 (2) of the Tax Law makes it quite clear that “the ultimate incidence of and liability for the tax shall be upon the consumer.” The requirements of stamping are merely a way to collect the tax, if, in fact, there is tax due.
As provided in Tax Law § 471 (1) “no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax.” The regulations of the Department of Taxation and Finance implementing this legislation clearly state that no tax will be imposed under article 20 of the Tax Law on cigarettes sold to out-of-state purchasers. (20 NYCRR 74.1 [c] [4].) Tax Law § 1814, which provides for criminal penalties for violations of article 20, specifically exempts common or contract carriers while engaged in lawfully transporting unstamped packages of cigarettes as merchandise, or lawfully transporting tobacco products. (Tax Law § 1814 [e].)
Petitioner has established that it is a corporation located on the Reservation of the Winnebago Tribe in the State of Nebraska. It admits purchasing the cigarettes from Ohserase Manufacturing, LLC, on the St. Regis Mohawk Indian Reservation. The product was consigned to a common carrier, D and T, under a bill of lading accurately indicating the quantity, source and destination. The affidavit of D and T’s driver also supports the fact that he intended to deliver his cargo in Nebraska without making any deliveries in New York. Upon this evidence, the petitioner has established, prima facie, that the presumption of possession of unstamped cigarettes was inapplicable. Respondents have submitted no contrary evidence.
Having determined there is no tax due on the cigarettes that were seized, the fact that there is some possibility they might be reintroduced into New York and subject to taxation cannot *750 provide a basis for seizure. Respondents rely upon New York State Dept. of Taxation & Fin. v St. Regis Group (217 AD2d 214 [3d Dept 1995]) for the proposition that the seizure is legal even if there is no tax due. In St. Regis, tractor trailer loads of liquor destined for the St. Regis Mohawk Reservation were seized before arriving on the Reservation. The seizures were done pursuant to Tax Law § 1845 and actions for forfeiture under that law were commenced. There was no dispute that the drivers did not have proper documentation and that the cargo was destined for the Reservation in New York State. In that case, it was held there was likelihood that there would be sales to nonmembers of the tribe and the court found that the registration and documentation requirements were not unduly burdensome.
The registration and documentation laws and regulations applicable to liquor transportation differ from those applicable to cigarettes and tobacco. Here, the fact that the product was being conveyed by a common carrier under a proper bill of lading evidencing delivery out of the state exempts it from taxation. Were this seizure to have taken place when the truck was destined for a delivery within New York, there would, perhaps, be a different result.
Respondents rely on only pure speculation that the products seized here would be reintroduced into this State. Statements made to respondents by the driver about past deliveries and information from the petitioner’s Web site are not sufficient to support the confiscation of private property without a warrant or the initiation of a criminal or civil proceeding.
Similarly, respondents’ reliance upon seizures under the laws of other states are also distinguishable. In State v Sedacca (249 A2d 456 [Md 1969]), a driver transporting unstamped cigarettes through the state was detained and charged and the cigarettes seized because he failed to have in his possession adequate paperwork as provided in the Maryland statute. Had the paperwork been proper, an exception to the need to have revenue stamps on the cigarettes would have been recognized. Here, the New York statute expressly exempts common carriers with a proper bill of lading, there was no tax due and no civil or criminal proceedings have ever been instituted.
Finally, respondents argue that Indian cigarette manufacturers may only make sales out-of-state through licensed agents or become agents themselves so that the tax may be prepaid through the purchase of stamps, subject to refund. There is no such requirement either in the New York Tax Law or in any *751 regulations. Where the law is clear that no tax is due, for the court to extrapolate the type of regulatory scheme proposed by respondents would be improper. That should be left for the Department of Taxation and Finance through regulation or the Legislature by statute.
In light of the lack of any legal authority for the seizure herein, it is the decision of this court, and it is hereby, ordered, that the respondents return, immediately, any and all property seized.

 Becker was erroneously named as “John Becker” in the caption.