John P. McMENEMY, Plaintiff,

v.

CITY OF ROCHESTER, City of Rochester Fire Department, Charles D. Ippolito, Individually and as Former Fire Chief of the City of Rochester Fire Department, David Griffith, Individually and as Fire Chief of the City of Rochester, Thomas P. Ryan, Jr., Individually and as Former Mayor of the City of Rochester, Louis N. Kash, Individually and as Former Corporation Counsel of the City of Rochester, William A. Johnson, Jr., Individually and as Mayor of the City of Rochester, Municipal Civil Service Commission, and Nancy E. Abrams, Defendants.

No. 94–CV–6289.

United States District Court, W.D. New York.

Sept. 14, 1999.

Glenn E. Pezzulo, Bradley C. Rosen, Culley, Marks, Tanenbaum, Capell and Pezzulo, Rochester, NY, for plaintiff.

Linda S. Kingsley, Corporation Counsel, Mary Elizabeth Magee, Alice Lyons Messina, Rochester, NY, for the City defendants.

Daniel J. Moore, Harris, Beach & Wilcox, Rochester, NY, for defendants.

## Decision and Order

SIRAGUSA, District Judge.

### Preliminary Statement

The plaintiff filed his initial complaint on June 14, 1994, an amended complaint on February 17, 1995, and a "Supplemented Amended Complaint" ("Supplemental Complaint") (document # 7) on September 11, 1998. It is that later complaint that is before the Court on his motion for partial summary judgment and the defendants' motions for judgment on the pleadings, or in the alternative, summary judgment. The First and Second causes of action in the plaintiff's Supplemental Complaint allege that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the New York Human Rights Law, N.Y. EXECUTIVE LAW Article 15, by

retaliating against the plaintiff for his investigation of sexual assault allegations against a union president. His Third cause of action alleges that defendants violated the Civil Rights Act of 1871, 42 U.S.C. § 1983, by failing to promote him and by failing to provide a fair promotional examination. The plaintiff's Fourth cause of action alleges that the defendants violated the NEW YORK CIVIL SERVICE LAW and City of Rochester Civil Service regulations by promoting persons other than the plaintiff to the rank of Fire Captain. The plaintiff's Fifth cause of action alleges a state defamation claim.

In addressing the motions, the Court will refer to Defendant Abrams individually as Abrams, and to the remaining defendants as the City defendants. The pending motions are: (1) Document # 95, Abrams' motion to dismiss, or for summary judgment; (2) Document # 98, the City defendants' motion for summary judgment; and (3) Document # 103, the plaintiff's sealed motion for partial summary judgment on the third cause of action in the plaintiff's Supplemental Complaint. The Court has had the benefit of voluminous memoranda, affidavits and exhibits along with oral argument. After careful consideration of the issues, the Court grants the defendants' motions on the federal causes of action and on the New York State Human Right's Law claim and the Court declines to exercise jurisdiction on the remaining state-based claim involving the New York Civil Service Law.

### Background

Rochester City Fire Lieutenant John P. McMenemy, the plaintiff, is a white male whom the City of Rochester Fire Department has employed since August 1984. Since that time, he has also been a member of the Rochester Firefighters Association, Inc., Local 1071 IAFF union. Defendant Nancy E. Abrams is a professional consultant in the field of personnel management, assessment and testing. The remaining defendants consist of the City of Rochester, its Fire Department, and current and former employees and public office holders of the City of Rochester, or departments of it.

In March of 1992, the plaintiff was elected Treasurer for the Local 1071 union. In his union position, the plaintiff was required, among other duties, to respond to the concerns or requests of union members. In December 1992, the plaintiff alleges [1] that defendant Ippolito, then the Chief of the Rochester Fire Department, called him into his office and told the plaintiff that he would promote him to Fire Captain in the Spring of 1993. The plaintiff further alleges that this promise became known among the officers of the Rochester Fire Department, who congratulated the plaintiff on his impending promotion. At oral argument, plaintiff's counsel conceded that at the time of Chief Ippolito's statement, no position was then open, however, it was anticipated that one would be available in the spring of 1994 when it was anticipated that a Fire Captain would be retiring.

In January 1993, Wendy Kern, a secretary for Local 1071, spoke with the plaintiff in his union capacity and complained that she was sexually assaulted by Daniel Cavuto. Daniel Cavuto, who was then the president of Local 1071, was employed as a fire fighter in the City of Rochester Fire Department. Ms. Kern alleged that union president Cavuto had sexually assaulted her on December 30, 1992 during her working hours, and that he had previously sexually harassed her on the job. After receiving this information from Ms. Kern, the plaintiff investigated her complaint and had what he describes as "contacts" with the Equal Employment Opportunity Commission and the New York State Division of Human Rights. Ms. Kern's federal and state suits contain the particulars of her complaints against union president Cavuto.

---

1. The Court has viewed the evidence in the light most favorable to the non-moving party as required by *Silver v. City University of New York,* 947 F.2d 1021, 1022 (2d Cir.1991).

*See,* Order Dismissing Complaint, *Kern v. City of Rochester,* No. 93–CV–6301 (W.D.N.Y., Oct. 5, 1995), *aff'd.* 93 F.3d 38 (1996), *cert. den.* 520 U.S. 1155, 117 S.Ct. 1335, 137 L.Ed.2d 494; *Kern v. City of Rochester,* 217 A.D.2d 918, 631 N.Y.S.2d 259 (4th Dept.1995).

On February 26, 1993, the plaintiff also informed Deputy Fire Chief Griffith of Ms. Kern's allegations, following the advice of Rochester City Police officers who were investigating Ms. Kern's criminal complaint against union president Cavuto. On the same day, Chief Ippolito told the plaintiff that he wished the police had come to him with Ms. Kern's complaints first. The plaintiff alleges that Chief Ippolito was a friend, ally and supporter of Cavuto's. The plaintiff further alleges that he was elected union treasurer based on his campaign against the manner in which Cavuto ran the union. Following his election as union treasurer, the plaintiff states that Chief Ippolito transferred him to a less desirable assignment.

On March 16, 1993, Chief Ippolito told the plaintiff that he should have reported Ms. Kern's complaints to him first, so the chief could have suspended Cavuto and investigated whether formal departmental charges should be placed against him. Three days later, the captain promotion list was posted and the plaintiff's name was not on it. At the time the list was posted, the plaintiff was one of three fire lieutenants eligible for promotion.

The plaintiff also alleges in his Supplemental Complaint that Chief Ippolito made false statements about the plaintiff and his work. The plaintiff brought this complaint to the mayor and corporation counsel, but nothing was done. Subsequently, however, the city removed Chief Ippolito, reportedly for inappropriate conduct, including the failure to take action against a Rochester fire fighter friend accused of sexual harassment of a Fire Department employee, and then promoting that friend to a training position where he was responsible for educating other fire fighters about the city's sexual harassment policies. In May 1994, Mayor Johnson named Deputy Chief Griffith as chief of the department. In 1994, the City administered another civil service Fire Captain examination. The plaintiff passed that test and was ranked ninth for promotion eligibility.

The plaintiff further alleges that, since he was first passed over for promotion in March of 1993, the City has promoted other officers to the rank of captain, including those who were lower on the civil service list than him. The plaintiff took another examination for Fire Captain in 1997 and was ranked fifteenth. The plaintiff alleges that the City did not properly grade these two civil service Fire Captain exams, and specifically with regard to the 1997 exam, the plaintiff claims that the defendants violated the Rochester Civil Service Commission rules, since there was no "key," only "guidelines" used by the graders.

## Discussion

### I. Summary Judgment Standard

The law on summary judgment is well settled. The Court may only grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317,

322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986). The court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

## II. Judgment on the Pleadings Standard

In considering a motion for judgment on the pleadings or dismissal under Federal Rule of Civil Procedure 12, the defendants must show that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Court must view the com-

plaint and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

## III. The Plaintiff's § 1983 Claims

In their responding papers, the defendants addressed the plaintiff's § 1983 claim[2] first, and stated that the plaintiff has failed to prove that they deprived him of a Constitutionally-protected property right. Abrams' Memorandum of Law ("Abrams' Memo"), at 5; City Defendants' Memorandum of Law ("City Memorandum"), at 1. The defendants contend that the plaintiff has failed to allege a deprivation of a federally protected right, and additionally Abrams alleges that she was not a state actor, and therefore, not acting under color of state law.

> Section 1983 provides in pertinent part, Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Although the plaintiff's papers do not separate his due process claims into substantive and procedural, the Court required him to do so at oral argument.

## A. The Plaintiff's Substantive Due Process Claims

In regard to substantive due process, plaintiff's counsel contended during oral argument that Chief Ippolito's statement to the plaintiff in December 1992, that he was to be promoted to captain the following spring, created a Constitutional right to the rank of captain. Additionally, the

---

2. All the defendants interpreted the plaintiff's motion as one for partial summary judgment on the § 1983 claim, despite the plaintiff's language saying he seeks partial summary judgment on his Fifth cause of action, one for defamation of character. At oral argument, the plaintiff withdrew the fifth cause of action.

plaintiff argued that he has a similar substantive due process right to a fair and competitive civil service examination. The Court disagrees with both contentions.

The Supreme Court has discussed the parameters of substantive due process and the fundamental rights protected by the Due Process Clause of the Fourteenth Amendment:

The Due Process Clause guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint. *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them' ") (*quoting Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests. *Reno v. Flores*, 507 U.S. 292, 301–302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Casey*, 505 U.S., at 851, 112 S.Ct. 2791. In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights to marry, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); to have children, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); to direct the education and upbringing of one's children, *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); to marital privacy, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); to use contraception, *ibid; Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); to bodily integrity, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96

L.Ed. 183 (1952), and to abortion, *C asey, supra.* We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment. *Cruzan*, 497 U.S., at 278–279, 110 S.Ct. 2841.

But we "ha[ve] always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins*, 503 U.S., at 125, 112 S.Ct. 1061. By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," *ibid*, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court, *Moore*, 431 U.S., at 502, 97 S.Ct. 1932 (plurality opinion).

*Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

The plaintiff has provided no authority elevating either the "right" to the rank of Fire Captain, or the "right" to a competitive promotional exam to the level of substantive due process alongside the rights enumerated in *Glucksberg*, above. In effect, the plaintiff is urging the Court to go where no Court has gone before. This Court is not prepared to do so. Although plaintiff's counsel in oral argument contended that the New York State Constitution created the right to a competitive examination, he did not address the well-settled federal precedent that,

areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the [U.S.] Constitution." *Regents of the Univ. of*

*Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded as long as the elements of procedural—not substantive—due process are observed.

*McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994).

■ Furthermore, as to both of the plaintiff's claims of substantive due process, not every wrong committed by a state or a municipality, rises to the level of a Constitutional tort. *Lee v. Hutson,* 810 F.2d 1030, 1032 (11th Cir.1987). State conduct that " 'shocks the conscience' or constitutes force that is 'brutal' and as such 'offend[s]' even hardened sensibilities" violates substantive due process. *Id.,* at 1032 (*quoting Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir.1985) (*en banc*), *quoting Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952)).

■ As the Supreme Court observed,

"Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that 'make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States,' " *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), quoted in *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

*Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662 , 88 L.Ed.2d 662(1986). Thus, even assuming the plaintiff has a state-based right to a fair and competitive civil service examination, or a right to a promotion under the facts alleged, the Court finds as a matter of law those rights do not rise to the level of a substantive due process right under the Constitution.

**B. The Plaintiff's Procedural Due Process Claim**

■ Plaintiff's counsel clarified that his procedural due process claim related only to the right to a competitive promotional exam and not to the failure to promote issue. In order to prove a procedural due process violation on his right to a competitive promotion exam, the plaintiff must prove (1) a cognizable property interest, (2) a deprivation of that property interest and (3) a denial of due process. *Buttitta v. City of Chicago,* 9 F.3d 1198, 1201 (7th Cir.1993). The Constitution does not create property interests. Those property interests stem from independent sources such as state law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S., at 577, 92 S.Ct. 2701 (1972). "[T]he sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

The New York Court of Appeals has addressed this very issue. In *Cassidy v. Municipal Civil Service Com. of City of New Rochelle,* 37 N.Y.2d 526, 529, 375 N.Y.S.2d 300, 337 N.E.2d 752 (1975), the Court held that,

The due process claim raised by petitioner is wholly without merit. The right alleged to have been violated here is not of sufficient substance to merit the protection of the due process guarantees of the New York and Federal Constitutions. Petitioner does not possess any mandated right to appointment or any other legally protectible interest. He can assert at most the right to consider-

ation for and a "hope" of appointment. (*See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. In *Hurley v. Board of Educ. of City of N.Y.*, 270 N.Y. 275, 200 N.E. 818), we said, in a different context: "It is not disputed that it is practicable to ascertain merit and fitness for the position of attendance officer by competitive examination. \*\*\* The plaintiff successfully passed the test required. She did not thereby gain a vested right to appointment to the position."

Clearly, New York law does not support the plaintiff's position.[3] However, even assuming for the sake of argument that the plaintiff has a state law created right to a fair and competitive examination, and the Constitution grants those rights procedural due process protection, he must still show the defendants deprived him of these rights without due process of law. In other words, though he does not need to "exhaust" state remedies available to him, he must, nevertheless, show that "state procedural remedies are inadequate." *Marino v. Ameruso*, 837 F.2d 45, 47 (2nd Cir.1988). This he has failed to do.

■ The plaintiff argues that his ability to seek review in New York is limited, so limited in fact, that he could not properly address the questions raised in this suit to the New York courts under the Civil Service Law and Article 78 of the Civil Practice Law and Rules.. Plaintiff's Memo in Opposition, at 10. However, a brief review of N.Y.C.P.L.R. § 7803 belies the plaintiff's contention. For example, the plaintiff claims the exam was not competitive as required by the N.Y.CONSTITUTION ARTICLE V, SECTION 6. That claim appears to be reviewable under subdivisions (1) and (3), or (4) if an evidentiary hearing is held.

N.Y.C.P.L.R. § 7803(1), (3) & (4); *see also* Alexander, Practice Commentaries, McKinney's N.Y.C.P.L.R. (Main Volume, 1984) § 7803. The Court has also reviewed the decision of New York Supreme Court Justice Raymond Cornelius, *Dlehant v. Civil Service Commission of the City of Rochester*, No. 3327/91 (N.Y.Sup. Ct., Monroe Cty., March 24, 1992), at 7, attached to Abrams' Memorandum of Law as Exhibit A. Justice Cornelius held that where the City of Rochester Civil Service Commission had not established a review procedure pursuant to N.Y.CIVIL SERVICE LAW § 50(7) for the questions and answers on the exams, the courts were available to conduct a review themselves. *See also McBride v. Civil Service Commission of the City of Rochester*[4], No. 959/91 (Sup.Ct., Monroe Cty., Jan. 29, 1992), at 2 (Boehm, J.) (because of the absence of a meaningful opportunity for review of the grading, scope thereof and answers, "the limitation on judicial review imposed by Civil Service Law § 50, paragraph 7, is not here applicable"). The Court is satisfied that if the plaintiff has a property interest in a fair and competitive examination, the plaintiff's state remedies for any procedural due process violations are adequate when measured against the Due Process clause of the Constitution.

■ Abrams moves for summary judgment on a separate ground apart from the City defendants. Abrams maintains, in regard to the plaintiff's § 1983 causes of action, that she was merely a private party who provided consulting services to the City of Rochester pursuant to two written agreements. Abrams' Statement of Facts (document # 97), at 3 & Exhibits 3 & 4 attached thereto. However, the plaintiff contends that the contracts signed between Abrams and the City of Rochester

---

**3.** A subsequent New York Court of Appeals case disagreed with a Southern District of New York case that held that passing a civil service examination and being placed on an eligibility list created a protected property interest. *See Deas v. Levitt*, 73 N.Y.2d 525, 532, 541 N.Y.S.2d 958, 539 N.E.2d 1086

(1989), *cert. den.* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989), disagreeing with *Drogan v. Ward*, 675 F.Supp. 832 (S.D.N.Y.1987).

**4.** A copy of this decision is attached as Exhibit B to Abrams' Memorandum of Law.

made her a state actor, since she was an agent of the City, and that by her involvement in the preparation of the 1994 and 1997 civil service exams, she violated his state constitutional right to a competitive exam, thereby rendering herself liable under 42 U.S.C. § 1983. The Court disagrees, and finds, as a matter of law, that the evidentiary proof in admissible form establishes that Abrams was not an agent, but rather a private independent consultant who provided technical advice to the City department charged with the responsibility of developing and administering the promotional exams.

█ The plaintiff contends that in addition to the contracts, Abrams is liable under § 1983 because she conspired with the City defendants to deprive McMenemy of his Constitutional rights. However, it is well settled that to prevail under this theory, the plaintiff must show that Abrams reached an understanding with City officials and was a willing participant in joint activity with them to violate the plaintiff's Constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *D'Agostino v. N.Y. State Liquor Authority*, 913 F.Supp. 757, 770 (W.D.N.Y.1996), *aff'd,* 104 F.3d 351 (2nd Cir.1996). Abrams counters in her motion for judgment on the pleadings that the plaintiff has neither alleged nor proved that she and the City defendants had a "meeting of the minds" that the plaintiff should be deprived of some Constitutional right. Abrams' Memo, at 7. The Court agrees. The plaintiff's allegations in the Supplemental Complaint merely demonstrate Abrams was a consultant and, in that capacity, assisted in the preparation of the Fire Captain promotional exams. At best, the plaintiff asserts a claim that she was negligent in her duties under the contract since she did not follow the requirements of N.Y.Civil Service Law.

## IV. The Plaintiff's Title VII and New York Human Rights Law Claims

█ The defendants further seek summary judgment, or judgment on the pleadings, on the plaintiff's Title VII claim, 42 U.S.C. § 2000e, and his New York Human Rights Law claim.[5] As to these claims, the plaintiff contends that the City defendants and Abrams retaliated against him because of his participation in the Wendy Kern discrimination complaint. It is clear that, "[i]n order to make out a prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2nd Cir.1995). The plaintiff argues that the "protected activity" in which he was engaged was his investigation into Wendy Kern's allegations that she had been sexually abused and harassed by union president Cavuto. It is undisputed that the complaints and the investigation all took place at the union offices. Moreover, Wendy Kern was never a City of Rochester employee, rather, she was an employee of the union. Essentially, the plaintiff argues that he was discriminated against by the City defendants for initiating an investigation into union president Cavuto's alleged discriminatory behavior against Kern, a non-City employee. He contends that both federal and New York law protect him from any retaliation because he opposed an employment practice made unlawful by the Civil Rights Act.

In support of their applications, the defendants rely primarily on *Wimmer v. Suffolk County P.D.*, 176 F.3d 125 (2nd Cir. 1999). Wimmer, a police officer, sued his

---

5. The plaintiff bases a complaint on New York Human Rights Law, New York Executive Law § 296(1)(e), which also prohibits the same conduct as Title VII. Requirements for a Human Rights Law claim are the same as those for a Title VII claim. *Pazamickas v. N.Y.S. Office of Mental Retardation*, 963 F.Supp. 190, 194 n. 4 (N.D.N.Y.1997). Plaintiff's counsel conceded such during oral argument.

employer, the police department, alleging retaliation because he brought to the department's attention racially harassing conduct by fellow police officers against minority members of the public. *Id.*, at 134. That case presented an issue of first impression to the Second Circuit, which held that Wimmer's claim of discrimination by co-employees against non-employees was *not* cognizable under Title VII. *Id.*, at 135. In reaching their decision, the *Wimmer* court specifically pointed to § 703(a) of Title VII, which in pertinent part, reads,

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

The *Wimmer* court then went on to adopt the reasoning of the Fourth Circuit in *Crowley v. Prince George's County*, 890 F.2d 683 (4th Cir.1989) quoting,

> It may be that the downgrading of [plaintiff's] position by the chief of police was wrongful or even spiteful. We have emphasized, however, that Title VII "is not a general 'bad acts' statute." Rather, the conduct it prohibits is specifically set forth. . . . While Congress may decide to extend the statute's coverage to persons who bring any discriminatory practice of an employer to light, such a step lies beyond the province of the courts. To find in Title VII protection for whistle-blowers on each and every instance of discrimination on the part of an employer is more than we think the plain language of its provisions will support.

*Wimmer*, 176 F.3d at 135 (*quoting Crowley v. Prince George's County*, 890 F.2d 683, 687 (4th Cir.1989), *quoting Holder v.*

*City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989)).

■ Consistent with this reasoning, the Second Circuit found that Wimmer's complaints about his fellow police officers' acts of discrimination against "minorities," and "racial slurs used on the police radio," did not fit within the definition of a protected activity entitling him to Title VII protection. *Wimmer*, 176 F.3d at 135–36. The plaintiff never addressed *Wimmer* in his opposition papers, nor was plaintiff's counsel, upon questioning from the Court during oral argument, able to effectively distinguish it. The Court finds that *Wimmer* is controlling.

Abrams presents an additional argument regarding the plaintiff's Title VII and Human Rights claims. She contends both that she was not an "employer" subject to Title VII [6] or the New York Human Rights Law [7] and that, even if she was, the plaintiff, by failing to file a complaint with the Equal Employment Opportunity Commission and receive a "right to sue" letter, has not met the conditions precedent to bringing a Title VII action against her. Abrams' Memo, at 21–34. The plaintiff again relies on agency principles as his basis for arguing that Abrams was an employer subject to Title VII and the Human Rights Law. However, the Court disagrees and, as stated above, finds that Abrams was not an agent of the City, but, rather, an independent consultant, and, therefore, not the plaintiff's "employer."

## V. The Plaintiff's Motion for Partial Summary Judgment on his Fifth Cause of Action for Defamation

As noted above, the plaintiff's Notice of Motion (document # 103) seeks partial summary judgment on his Fifth cause of action. That cause of action seeks a judgment against defendant Ippolito under

---

**6.** Title VII applies to employers who have in their employ at least fifteen employees. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–1316 (2nd Cir.1995).

**7.** N.Y.Exec.Law § 296(5) makes the Human Rights Law provisions. applicable to employers who have four or more persons in their employ.

New York law for his action in "making false statements about [Lt. McMenemy] which injure[d][his] reputation[ ] and [his] standing in [his] profession and/or community." Supplemental Complaint, at ¶¶ 89–93. At oral argument, counsel for the plaintiff withdrew that claim.

### VI. Abrams' Motion for Attorney Fees

Abrams seeks an award of attorney fees pursuant to 42 U.S.C. § 2000e–5(d) and 42 U.S.C. § 1988. Under § 1988, an award of attorney fees does not turn merely on whether the defendant has prevailed. The Court must examine the action "from its commencement to its termination to determine whether it was vexatious, frivolous, unreasonable or without foundation or whether the plaintiff[ ] continued to prosecute [his] claim after it had become clear that it was meritless." *Della Pietra v. N.Y. State Organized Crime Task Force*, 630 F.Supp. 986, 988 (W.D.N.Y.1986). As previously mentioned, the Court finds that Abrams was a private individual and there is no evidence that she ever conspired with the City defendants to deprive the plaintiff of his civil rights. The plaintiff filed this case in June 1994 against the city defendants. In September 1998 the plaintiff filed his Supplemental Complaint and for the first time included Abrams. The plaintiff testified at a deposition that Abrams had designed the civil service Fire Captain examinations, at issue here, specifically to discriminate against him, yet he provided no basis for his opinion, despite having the benefit of depositions, thousands of pages of discovery, and the services of a testing expert. The plaintiff's deposition of Abrams concerning the intricate meanings of the Civil Service Commission's Rule X, Reply Affirmation of Glenn E. Pezzulo (document # 121), at ¶¶ 15–19, might support a finding that Abrams was negligent, but certainly does not support the plaintiff's position in this suit with regard to the due process, Title VII or New York Human Rights Law claims against her.

The plaintiff counters that Abrams did not fight her addition as a party to this case in 1998 and should not now be awarded attorney fees. However, it is undisputed that Abrams was told by the plaintiff's counsel that the basis for the plaintiff's claims against her would be made clear at the conclusion of discovery. One month following the completion of discovery, plaintiff's counsel told her that "[i]n essence, the claim was that the tests did not comply with certain state and federal guidelines." Abrams' Reply Memorandum (document # 124), at 9. The Court finds that at least at that time, the plaintiff should have known that there was no good faith basis to sue Abrams on any federal causes of action, or on the state Human Rights Law cause of action. However, since the Court is declining to exercise jurisdiction over the remaining state law cause of action under the New York Civil Service Law, it makes no determination as to whether that claim was frivolous, unreasonable or without foundation.

 In consideration of the above facts and circumstances, the Court, in its discretion, will award reasonable attorney fees for Abrams' defense of the federal causes of action and of the New York State Human Rights Law claims, from the close of discovery to the present.

The Court directs counsel for Abrams to file an affidavit containing an itemized list of hours, consistent with this decision, and a statement of any applicable billing rates. The affidavit is to be filed within two weeks of counsel's receipt of a filed copy of this decision and order. Counsel for the plaintiff will have two weeks after receipt of a filed copy of defendant's affidavit to respond.

### Conclusion

For these reasons, the Court denies the plaintiff's motion (# 103) for summary judgment, grants the defendants' motions ( 95 & 98) for summary judgment on the First, Second and Third causes of action, recognizes the plaintiff's withdrawal of the

Fifth cause of action, and declines to exercise jurisdiction over the remaining state cause of action (Fourth cause of action). Defendant Abram's motion for reasonable attorney fees is granted in part and her counsel is directed to file an affidavit as further elaborated above. The Supplemental Complaint is, therefore, dismissed.

SO ORDERED.